```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
ASSOCIATED PRESS,                        :
                                         :
              Plaintiff,                 :    05 Civ. 5468 (JSR)
                                         :
         -v-                             :    MEMORANDUM ORDER
                                         :
UNITED STATES DEPARTMENT OF DEFENSE,     :
                                         :
              Defendant.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

This is a fourth chapter in the ongoing efforts of plaintiff Associated Press ("AP") to obtain from defendant Department of Defense ("DOD"), pursuant to requests made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., information regarding the individuals presently or formerly housed in the detention facility at Guantanamo Bay, Cuba. See Associated Press v. U.S. Dep't of Def., 410 F. Supp. 2d 147 (S.D.N.Y. 2006) ("AP I"); Associated Press v. U.S. Dep't of Def., 34 Media L. Rep. 2251, 2006 WL 2707395 (S.D.N.Y. September 20, 2006) ("AP II"); Associated Press v. U.S. Dep't of Def., 462 F. Supp. 2d 573 (S.D.N.Y. 2006) ("AP III").  The requests that are the subject of the present application, however, much more directly implicate considerations of national security than those previously before the Court.

By way of background, it should be noted that, as a consequence of the prior proceedings in this Court and ancillary agreements between the parties, DOD has now produced all or most of the names, internment serial numbers, citizenship information, and dates and places of birth of the detainees presently or formerly held

at Guantanamo, as well transcripts of much of the administrative proceedings relating to their status as enemy combatants. See Declaration of Karen L. Hecker dated May 11, 2006 ("Hecker Decl.") ¶ 6-7. The instant application, however, concerns a different kind of information relating to a subset of the overall set of detainees. Specifically, it concerns the determinations that led to the transfer or release of those detainees who were released or transferred from Guantanamo prior to the advent, in 2004, of the Administrative Review Boards (the "ARBs") that thereafter made such determinations.

Before the ARBs were created, the decision whether to transfer or release a detainee from Guantanamo Bay was made, on a case-by-case basis, by then Deputy Secretary of Defense Paul Wolfowitz upon review of recommendations and supporting materials provided to him, initially by DOD's Office of Special Operation/Low Intensity Conflict and later by the Office of Detainee Affairs. See Declaration of Charles D. Stimson ("Stimson Decl.") dated August 22, 2006, ¶¶ 4-7. On January 18, 2005, AP made a FOIA request seeking, inter alia, "Details and Explanations of the decisions made to release or transfer detainees, including the reason why the decision was made." See Declaration of David A. Schulz dated September 12, 2006, Ex. A. Initially, DOD did not produce any documents in response to this request, see id.; Declaration of Karen L. Hecker dated August 22, 2006 ("Second Supp. Hecker Decl.") ¶¶ 3-4; but, after AP filed this lawsuit, DOD did produce redacted documents relating to those detainees who were released or transferred by the

ARBs, and it was these documents that were the subject, in part, of this Court's prior rulings.  DOD did not, however, produce, or even search for, documents related to the decisions made to release or transfer detainees prior to the creation of the ARBs.  Id.  When, in response to continuing litigation, DOD finally undertook to search for such documents, it informed the AP that this process might take up to a year.  See Memorandum In Opposition To Defendant's Motion For Partial Summary Judgment ("AP Mem.") at 9.  In the interim, however, by agreement of the parties, see id., DOD filed the instant motion for partial summary judgment, asking the Court to approve its proposed redactions to a "representative sample" of the kinds of documents it anticipated would be found responsive to AP's request.  The representative sample consists of:

> (1) The "USSOUTHCOM Memo": A redacted memorandum from the Guantanamo Bay Joint Task Force provided through U.S. Southern Command ("USSOUTHCOM"), which describes the background and alleged activities of a given detainee, the "threat level" and "intelligence value" of the detainee, and a recommendation as to whether the detainee should be released. See Declaration of Real Admiral Harry B. Harris, Jr. ("Harris Decl.") dated August 18, 2006; see also id., Ex. 1 ("sample USSOUTHCOM memo").

(2) <u>The "CITF Memo"</u>: A redacted memorandum from DOD's Criminal Investigation Task Force ("CITF"), which gives background information about a given detainee, an assessment as to the detainee's "threat level" and law-enforcement value, the status of CITF's investigation of the detainee, and a bottom line recommendation on whether the detainee should be released, transferred, or further detained. <u>See</u> Declaration of Colonel David A. Smith ("<u>Smith Decl.</u>") dated August 17, 2006; <u>see also</u> <u>id.</u>, Ex. 1 ("sample CITF memo").

(3) <u>The "DA Action Memo"</u>: A redacted memorandum from the Office of Detainee Affairs ("DA"), which summarizes the foregoing USSOUTHCOM Memo and CITF Memo and other input solicited by DA, and makes a formal recommendation as to the detainee discussed. <u>See</u> Stimson Decl. ¶ 6; <u>see also</u> <u>id.</u>, Ex. 1 ("Sample DA Action Memo").

(4) <u>The "DA Worksheet"</u>: A one-page "worksheet" that more briefly summarizes the foregoing information. <u>See</u> <u>id.</u>, Ex. 2 ("sample DA worksheet").

(5) <u>Wolfowitz's Notes</u>: Handwritten notes of Deputy Secretary Wolfowitz, made on the DA Action Memo,

-4-

>relating to his final decision whether to transfer or release the detainee in question. See Stimpson Decl., Ex. 1. See also Second Supp. Hecker Decl. ¶ 4.

Although the Court delayed some months after the partial summary judgment motion was submitted so as to make sure that the continuing search for responsive documents did not reveal other issues that the Court could address categorically, no indication has been forthcoming that the samples described above are not fairly representative of the documents and proposed redactions comprising the entirety or great bulk of the documents responsive to AP's request regarding "pre-ARB" transfers and releases. Accordingly, the Court is now prepared to rule on the motion.

Initially, it may be noted that AP no longer challenges, if it ever did, many of the redactions, e.g., the redaction of Deputy Secretary Wolfowitz's handwritten notes. See Schulz Decl. ¶ 4; AP Mem. at 10 n.6. Nevertheless, AP contends it is still entitled to disclosure of (1) "the reasons upon which [DOD] justified the transfer or release of a detainee" as stated in the DA Action Memo; (2) the "factual details collected and analyzed in the decisional documents"; and (3) the name and other identifying information of the

-5-

detainee in question.[1] See AP Mem. at 10. These three categories cover the bulk of what has been redacted.

In opposing such disclosures, DOD does not limit itself to the national security limitation set forth in FOIA Exemption 1, 5 U.S.C. § 552(b)(1), but also relies on FOIA Exemption 2, 5 U.S.C. § 552(b)(2), covering internal agency procedures, FOIA Exemption 5, 5 U.S.C. § 552(b)(5), protecting certain deliberative agency processes, and FOIA Exemption 6, 5 U.S.C. § 552(b)(6), relating to privacy. Nevertheless, DOD does assert that FOIA Exemption 1, 5 U.S.C. § 552(b)(1), is the one exemption that applies to each and every redaction here in issue. Exemption 1 exempts from production records that are:

> (A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1). The pertinent Executive Order, in turn, is Executive Order 12958, as amended, which permits classification as secret of those records that relate, inter alia, to "intelligence sources or methods" if "the unauthorized disclosure of the information reasonably could be expected to result in damage to the

---

[1] Although AP contends that DOD has waived its right to withhold the names by virtue of having now released all the names and basic biographical information of all the detainees presently or formerly held at Guantanamo, no such waiver has occurred because DOD has not disclosed which of those detainees were released as a result of the "pre-ARB" review process, the specific information AP now seeks. See Halpern v. FBI, 181 F.3d 279, 294 (2d Cir. 1999) (limiting waiver, in the context of Exemption 1, as applying "only where the government has officially disclosed the specific information the requester seeks"). As discussed below, knowledge of which of the detainees were released "pre-ARB" has material security implications.

-6-

national security." Executive Order 12958 § 1.1(a). On the basis of such a determination, all the documents that comprise the representative sample were originally classified at the Secret level. See Harris Decl. ¶ 14; Smith Decl. ¶ 11; Stimson Decl. ¶ 11; Second Supp. Hecker Decl. ¶¶ 7-9. In the form now proffered by DOD, they remain very heavily redacted.

In reviewing an agency's assertion of a withholding under Exemption 1, a court must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record, albeit without relinquishing [the Court's] independent responsibility" to review those determinations de novo. Goldberg v. U.S. Dep't of State, 818 F.2d 71, 77 (D.C. Cir. 1987) (internal quotations omitted). Thus, while "the burden is with the agency to justify nondisclosure," Donovan v. F.B.I., 806 F.2d 55, 60 (2d Cir. 1986), a court "must accord 'substantial deference' to agency affidavits that implicate national security." Lawyers Committee for Human Rights v. INS, 721 F. Supp. 552, 561 (S.D.N.Y. 1989) (Walker, J.) (quoting Donovan, 806 F.2d at 60); Doherty v. Dep't of Justice, 775 F.2d 49, 52 (2d Cir. 1985). Accordingly, "[a]n agency invoking Exemption 1 is entitled to summary judgment when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.' Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1982); see also Doherty, 775 F.2d at 52;

Diamond v. F.B.I., 707 F.2d 75 (2d Cir. 1983)." AP III, 462 F. Supp. 2d at 576.

In support of the various redactions here in question, DOD submitted, as part of the public record, an affidavit from Rear Admiral Henry B. Harris, Jr., the Commander of JTF-GTMO and the Original Classification Authority of the documents at issue, asserting that the information sought by AP, if released, could jeopardize the national security, both by revealing critical details of the extent and operations of United States intelligence and by implicitly revealing the sources of the intelligence in particular cases. See Harris Decl. ¶¶ 14,16,18. That affidavit, however, failed to provide sufficient particularization as to allow the Court to make any informed determination of whether any given redaction satisfied Exception 1. The Court therefore undertook to personally review, over a period of many hours, the unredacted sample documents themselves, as well as an additional "Top Secret" declaration given by a high-level DOD person with knowledge that not only amplified DOD's security concerns but also made clear why DOD could not publicly explain itself in greater detail.

After a thorough scrutiny of the documents and supporting declaration, the Court finds that all of the information presently in dispute has been properly withheld pursuant to Exemption 1. Regrettably, the very nature of the security interests involved precludes further elaboration here.[2] The most that can be said is

---

[2] Of course, the Court's ruling here is subject to review by the Court of Appeals, which can peruse, in camera, the same materials that were so persuasive to this Court.

that, while the determinations by the ARBs that were the subject of some of this Court's prior rulings were quasi-judicial proceedings concerned with preliminary determinations of fact, the pre-ARB process was much more directly concerned with considerations and strategies of national security.

Accordingly, the Court hereby grants DOD's motion for partial summary judgment and directs that the redactions here approved be applied pro tanto to such other similar "pre-ARB" documents as are subsequently supplied.³ Counsel are directed to jointly call chambers, by no later than August 16, 2007 at 5 p.m., to schedule further proceedings herein.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       August 9, 2007

---

³Given this result, the Court need not reach the questions of whether the challenged redactions may also be justified under other FOIA exemptions.